UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICKEY L. BRYANT, JR.,

              Plaintiff,          **DECISION AND ORDER**

      v.                           6:16-CV-06766 EAW

MICHAEL L. CIMINELLI, JOHN DOES 1-20,
and CITY OF ROCHESTER,

              Defendants.
_____

## INTRODUCTION

    Plaintiff Rickey L. Bryant, Jr. ("Plaintiff") filed this action on November 29, 2016, alleging various claims pursuant to 42 U.S.C. § 1983, as well as claims under New York state law, arising out of an alleged vicious and unprovoked attack of Plaintiff while he was riding his bicycle, by unidentified officers with the Rochester Police Department. (Dkt. 1). Presently before the Court is a motion to dismiss for failure to state a claim by the Chief of Police, defendant Michael L. Ciminelli ("Ciminelli"), John Does 1-20 ("the John Doe officers"), and the City of Rochester ("the City") (collectively, "Defendants). (Dkt. 3). For the reasons stated below, Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

    The facts alleged in the complaint are as follows: Plaintiff, 17 years old at the time of the events, alleges that between 10:00 p.m. on August 7, 2016, and 1:00 a.m. on

- 1 -

August 8, 2016, he was unconstitutionally seized and beaten by John Doe officers of the Rochester Police Department ("RPD"). (Dkt. 1 at ¶¶ 21-46). Plaintiff was riding his bicycle on Remington Street in Rochester, New York, when approximately twenty RPD officers traveling in three RPD vehicles "suddenly pulled over in front of Plaintiff[,] forcing him onto the sidewalk." (*Id.* at ¶ 22). One John Doe officer "rapidly approached [Plaintiff] and punched him in his left eye and face[,] causing [Plaintiff] to fall of[f] his bicycle and onto the ground." (*Id.* at ¶ 23). Plaintiff was shot with "pepper balls," maced, and tased. (*Id.* at ¶¶ 24-25). Five or six John Doe officers then kicked and punched Plaintiff "while the other officers stood there watching and failing to intervene to protect Plaintiff." (*Id.* at ¶ 25).

After beating Plaintiff, John Doe officers handcuffed and transported him by RPD vehicle to a police station parking lot, where ambulance personnel gave Plaintiff medical treatment. (*Id.* at ¶¶ 28-34). Despite Plaintiff's request, the John Doe officers refused to transport Plaintiff to the hospital for treatment. (*Id.* at ¶ 33). Following the medical care by ambulance personnel, Plaintiff was "told that he was free to leave." (*Id.* at ¶ 34). Plaintiff was never charged with a violation or crime. (*Id.* at ¶ 35).

As a result of the incident, "Plaintiff suffered an orbital fracture to and injury to his left eye, blurred vision in the left eye, right chest wall contusion, head injury, headaches, concussion, right sided rib pain, right upper leg pain, multiple contusions and bruising, post-traumatic stress disorder, together with other physical and psychological injuries." (*Id.* at ¶ 37).

## DISCUSSION

I.  **Standard of Review**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011). In considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally may consider only "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, "at a bare minimum, the operative standard requires the

- 3 -

plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (citations omitted).

## II. The Court Will Not Consider Facts Outside the Four Corners of the Complaint

Before addressing the merits of Defendants' motion to dismiss, the Court must address facts submitted to the Court, both supporting and opposing the motion to dismiss, which do not appear in the complaint. In particular, Plaintiff submits: (1) a lengthy factual affidavit from Plaintiff's counsel (Dkt. 6); (2) an affidavit from an alleged eyewitness, Pedro Luis DeJesus (Dkt. 6-1); and (3) a letter to Plaintiff's counsel from the City dated December 29, 2016 (Dkt. 6-2). Additionally, Plaintiff, in opposition to the motion, suggests that the Court refer to papers submitted in opposition to a summary judgment motion in an entirely different, unrelated case. (*See* Dkt. 6-3 at 12-14). Defendants, for their part, include facts in their memorandum of law which are not present in the complaint. (*See* Dkt. 3-2).[1]

In deciding a Rule 12(b)(6) motion, the Court is generally limited to reviewing "the allegations contained within the four corners of [Plaintiff's] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998); *see, e.g.*, *Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000) (finding that a district court errs if, in deciding a

---

[1] For instance, Defendants contend, without citation to anything in the record, that police were responding to a 911 call that a black male on a bicycle had fired a gun at the location. (Dkt. 3-2 at 1).

- 4 -

Rule 12(b)(6) motion, it "relies on factual allegations contained in legal briefs or memoranda"). However, where the additional documents are integral to or relied upon by the complaint, the court may consider them without converting the motion to one for summary judgment under Federal Rule of Civil Procedure 56. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (holding that even if not attached to the complaint, a document which is "*integral to the complaint* may be considered by the court in ruling on [a Rule 12(b)(6)] motion." (citations omitted)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where [the] plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

Here, reliance on the facts not mentioned in the complaint by both Plaintiff and Defendants is procedurally improper. The parties have submitted facts which go beyond what is alleged in the complaint, and include information that is neither integral to nor relied on in the complaint. Plaintiff, wholly inappropriately, even suggests that this Court look to evidence submitted in another case to support his argument that the complaint was sufficiently pleaded.

If the Court considered any of the additional facts or affidavits, the motion would be converted to one for summary judgment. No party is on notice of such a conversion, and as Plaintiff's counsel points out, no discovery has yet occurred in this case. (*See* Dkt.

6-3 at 17). Therefore, such conversion is inappropriate, and the Court will not consider the extraneous material provided by the parties in deciding the instant motion.

### III. Defendants' Motion to Dismiss

Plaintiff raises eight claims. (Dkt. 1). Pursuant to § 1983, Plaintiff brings claims for: (1) illegal search and seizure against the John Doe officers and the City; (2) excessive use of force against the John Doe officers and the City; (3) failure to intervene/protect against the John Doe officers and the City; (4) "failure to implement policies, customs and practices" claim against the City; and (5) a *Monell* claim against the City and Ciminelli. (*Id.*). Plaintiff also brings claims under New York state law for: (1) battery against the John Doe officers and the City; (2) assault against the John Doe officers and the City; and (3) negligence against all Defendants. (*Id.*). Defendants move to dismiss all federal claims as against the City and Ciminelli, the failure to intervene/protect claim in its entirety, and the negligence claim in its entirety.[2] (Dkt. 3-2).

#### A. Plaintiff's Federal Claims

##### 1. Plaintiff's Federal Claims Against the City of Rochester

Defendants first argue that all § 1983 claims against the City must be dismissed. (Dkt. 3-2 at 4-6). Specifically, Defendants argue that Plaintiff's allegations fail to

---

[2] Defendants do not move to dismiss the illegal search and seizure, excessive use of force, battery, and assault claims against the John Doe officers. (*See* Dkt. 3-2). Defendants also do not move to dismiss the battery and assault claims against the City. (*See id.*).

- 6 -

plausibly allege, in non-conclusory terms, that the City engaged in a pattern of unconstitutional violations. (*Id.* at 5).

"The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)). In order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal "policy or custom" from which the alleged injury arose. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

> A plaintiff may satisfy the "policy or custom" requirement by alleging the existence of "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."

*Perrone v. O'Flynn*, 11-CV-6411 CJS-MWP, 2015 WL 7776930, at *5 (W.D.N.Y. Dec. 2, 2015) (quoting *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301 (S.D.N.Y. 2015) (citation omitted)).

It is well-settled that a plaintiff's conclusory allegations, which merely recite the elements of a *Monell* claim, are insufficient to state a claim for municipal liability. *See Giaccio v. City of N.Y.*, 308 F. App'x 470, 472 (2d Cir. 2009) (affirming dismissal of a

*Monell* claim where the plaintiff identified, "at most, only four examples" of constitutional violations, because "[t]his evidence falls far short of establishing a practice that is so persistent and widespread as to justify the imposition of municipal liability" (internal quotations omitted)); *Worrell v. City of N.Y.*, No. 12-CV-6151 (MKB), 2014 WL 1224257, at *12 (E.D.N.Y. Mar. 24, 2014) ("[A] single incident of [the plaintiff's] own allegedly negligent investigation is not sufficient to impose municipal liability without additional allegations from which [the c]ourt may infer that it was caused by a practice so widespread as to practically have the force of law."); *Weaver v. City of N.Y.*, No. 13-cv-20 (CBA)(SMG), 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("[V]ague and conclusory assertions are not sufficient to state a claim of municipal liability under *Monell*."); *Genovese v. Town of Southhampton*, 921 F. Supp. 2d 8, 25 (E.D.N.Y. 2013) ("[V]ague and conclusory assertions that the [defendant municipality] should have known that officers would encounter these situations, and that the [defendant municipality] did not adequately train officers to properly respond . . . without any actual supporting evidence, are insufficient to adequately plead a *Monell* claim."); *Murray v. Admin. for Children's Servs.*, 476 F. Supp. 2d 436, 442 (S.D.N.Y. 2007) ("The Amended Complaint does not allege other similar instances . . . that could raise an inference that the [defendant municipality] maintains a policy or custom of deliberate indifference to these types of constitutional deprivations."), *aff'd*, 293 F. App'x 831 (2d Cir. 2008); *see, e.g.*, *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 589 (S.D.N.Y. 2014); *Irish v. City of N.Y.*, No. 09 Civ.5568(RMB), 2010 WL 5065896, at *6 (S.D.N.Y. Dec. 6, 2010).

Here, Plaintiff alleges that the City:

    a.    fail[ed] to adequately train its police officers regarding the proper methods for stops, arrest procedures, use of force and/or intervening to prevent constitutional rights violations from occurring by other police officers;
    b.    fail[ed] to adequately investigate excessive force complaints of citizens whose constitutional rights are violated;
    c.    fail[ed] to independently investigate and [sic] all excessive force complaints of citizens which are brought to its attention;
    d.    fail[ed] to refer all excessive force complaints of citizens to the Civilian Review Board for review;
    e.    allow[ed] the investigation and internal review of excessive force/police misconduct cases to be controlled and/or influenced by the Rochester Police Department and not by the Center For Dispute Settlement, an independent Civilian Review Board or other agency;
    f.    fail[ed] to administer the internal review process of excessive force and/or police misconduct cases through an independent Civilian Review Board through Center For Dispute Settlement and in compliance with Rochester City Council Resolution 92-40, enacted October 13, 1992, and modified in 1995 by Resolution 95-8 of the Rochester City Council;
    g.    promot[ed] and tolerat[ed] a custom and policy in which officers violate the constitutional rights of citizens through unlawful stops, searches, seizures, excessive force and/or fail[ed] to intervene to prevent such violations;
    h.    fail[ed] to suspend, terminate or take disciplinary action against officers who violate rights of citizens through unlawful stops, searches and seizures, excessive force and/or fail[ed] to intervene to prevent such violations; and
    i.    fail[ed] to adequately train and supervise officers who are prone to commit unlawful stops, searches and seizures, use of excessive force and/or failure to intervene to prevent such constitutional rights violations.

(Dkt. 1 at ¶ 78). Plaintiff states that such practices are "so consistent and widespread and constitute customs or usages of which City of Rochester supervising policy-makers were aware of and which cause deprivation of constitutional rights of citizens, including Plaintiff." (*Id.* at ¶ 80).

Despite the fairly lengthy recitation of the basis for his claims against the City, Plaintiff puts forth *no facts* alleging a municipal policy. In essence, Plaintiff contends that the City failed to adequately train its officers and failed to implement an appropriate process for addressing complaints of police misconduct—but these allegations are conclusory in nature. In short, "Plaintiff's complaint is light on facts and heavy on conclusory language...." *Grantley v. City of N.Y.*, No. 12 Civ. 8294(KBF), 2013 WL 6139688, at *3 (S.D.N.Y. Nov. 21, 2013); *see also Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011) (dismissing *Monell* claims because "the complaint d[id] not allege facts sufficient to show that 'the violation of [the plaintiff's] constitutional rights resulted from a municipal custom or policy.'" (citation omitted)). The complaint includes no allegations of other incidents which could point to a policy or custom of deliberate indifference by the City. Plaintiff only alleges facts related to a single incident, which is insufficient to establish *Monell* liability. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."). Accordingly, the motion to dismiss Plaintiff's § 1983 claims against the City is granted.

2. **Plaintiff's Supervisory Liability Claims**

Defendants next argue that Plaintiff's claims for supervisory liability against Ciminelli must be dismissed. (Dkt. 3-2 at 7-8).

- 10 -

A supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *see Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("Supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." (citation omitted)). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Personal involvement may be shown where:

> A supervisory official, after learning of the violation through a report or appeal, . . . failed to remedy the wrong[;] . . . created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue[; or] . . . was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Williams*, 781 F.2d at 323-24 (internal citations omitted). However, a "'plaintiff cannot base liability solely on the defendant's supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department." *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003) (citation omitted).

"[T]he conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights, without supporting factual allegations, is not sufficient to state a claim under § 1983." *Roberites v. Huff*, No. 11-CV-521SC, 2012 WL 1113479, at *6 (W.D.N.Y. Mar. 30, 2012) (citing *Houghton*, 295 F. Supp. 2d at 276-77); *see also Montero v. Travis*, 171 F.3d 757, 761-62 (2d Cir. 1999) (finding a claim against a parole board chairman was "properly dismissed as frivolous because [the plaintiff]

- 11 -

never alleged any facts describing [the chairman's] personal involvement in the claimed constitutional violations").

Here, Plaintiff's allegations are wholly conclusory. Plaintiff alleges, as the basis for his supervisory liability claim:

> A. Failure to adequately train and supervise City of Rochester police officers regarding: 1) their duty to intervene to prevent to protect the constitutional rights of citizens from infringement; 2) constitutional limitations on stops; 3) the use of force; 4) arrests; and 5) searches and seizures of persons;
> B. Failure to adequately discipline, suspend, terminate and/or retrain officers involved in misconduct;
> C. Hiring, assigning/selecting and retention of City of Rochester police officers with demonstrable propensities for use of excessive force, violence, dishonesty and other misconduct;
> D. Condoning and encouraging City of Rochester police officers in the belief that they can violate the rights of persons such as Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for continued employment, promotion and other employment benefits;
> E. Failure to take adequate measures to discipline City of Rochester police officers who engage in the use of excessive force, unlawful stops, arrests, searches, seizures, violence, dishonesty and other misconduct;
> F. Failure to practice and enforce proper reporting and investigation of use of force by City of Rochester police officers;
> G. Allowing the investigation and internal review of excessive force/police misconduct cases to be controlled and/or influenced by the Rochester Police Department and not by the Center For Dispute Settlement, an independent Civilian Review Board or other agency;
> H. Failing to allow the internal review process of excessive force cases through an independent Civilian Review Board through Center For Dispute Settlement and in compliance with Rochester City Council Resolution 92-40, enacted October 13, 1992, and modified in 1995 by Resolution 95-8 of the Rochester City Council;
> I. Ratification by the highest levels of authority of the specific unconstitutional acts alleged in [the complaint].

(Dkt. 1 at ¶ 88).

As with his claims against the City, Plaintiff alleges no *facts* suggesting personal involvement by Ciminelli. Plaintiff's accusations are conclusory and fail to raise the specter of relief beyond the speculative level.

Plaintiff's citation to *Kastle v. Town of Kent, N.Y.*, No. 13 CV 2256(VB), 2014 WL 1508703 (S.D.N.Y. Mar. 21, 2014), is misplaced. (*See* Dkt. 6-3 at 16). The critical difference between that case and this one is that in *Kastle* the plaintiff included factual allegations in his complaint which gave rise to "a plausible inference [the supervisory defendants] were deliberately indifferent to violations...." *Id.* at *13. Here, Plaintiff failed to plead *a single fact* suggesting personal involvement by Ciminelli. Therefore, the motion to dismiss Plaintiff's § 1983 claims against Ciminelli is granted.

### 3. Plaintiff's Failure to Intervene/Protect Claim

Defendants also argue that Plaintiff's failure to intervene/protect claim should be dismissed. (Dkt. 3-2 at 10-11). "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

> An officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers. Whether the officer had a "realistic opportunity" to intervene is normally a question for the jury, unless, "considering all the evidence, a reasonable jury could not possibly conclude otherwise."

*Terebesi v. Torreso*, 764 F.3d 217, 243-44 (2d Cir. 2014) (citations omitted). "A police officer cannot be held liable in damages for failure to intercede unless such failure

permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997).

If true, the events described in the complaint—a vicious, unprovoked attack on Plaintiff by five or six John Doe officers—clearly would violate Plaintiff's right to be free from the use of excessive force and unconstitutional searches and seizures, and a reasonable officer would know as such. Plaintiff alleges that more than a dozen John Doe officers stood by while he was beaten. These allegations are sufficient to state a claim for failure to intervene.

Defendants raise the issue of qualified immunity. (Dkt. 3-2 at 10). Qualified immunity can be established by the facts alleged in a complaint. *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015). However, the facts Plaintiff alleges do not allow for the inference that the John Doe officers acted within clearly established law, or that it was objectively reasonable for the John Doe officers to think they were acting within the law. *See id.* at 92 ("Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." (citation omitted)). As such, the existence of qualified immunity cannot be determined from the facts alleged in the complaint.

Defendants also argue that "Plaintiff has stated no facts demonstrating specific Officers were acting to stop and/or arrest [] Plaintiff and other Officers, if any, were not engaged in the stop or failed to act." (Dkt. 3-2 at 11). Defendants' argument seems to be premised on the fact that Plaintiff has named "John Does," rather than the specific individuals purportedly involved in the incident. (*See id.*). Defendants' argument lacks merit. "When a plaintiff is ignorant as to the true identity of a defendant at the time of filing the complaint, most federal courts typically will allow the use of a fictitious name in the caption. . . ." 5A C. Wright, A. Miller, et al., *Federal Practice & Procedure* § 1321 (3d ed. 2017). As a result, Plaintiff may name "John Doe" defendants, and the fact that those defendants are so named does not change this Court's analysis as to whether Plaintiff's allegations state a claim. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (reversing where the district court dismissed a *pro se* complaint, in part, because the plaintiff failed to identify two "John Doe" defendants, and finding that under Fed. R. Civ. P. 8(a), "a complaint need not contain detailed factual allegations—such as . . . the names of 'each and every individual' involved in the misconduct").

At least at this stage of the proceedings, Plaintiff states a claim for failure to intercede. As such, this portion of Defendants' motion is denied.

### B.   Plaintiff's State Law Claims

#### 1.   Plaintiff's Negligent Hiring, Training, Supervision, and Retention Claims

Defendants next argue that Plaintiff's negligent hiring, training, supervision, and retention claim against the City and Ciminelli must be dismissed. (Dkt. 3-2 at 8).

Plaintiff's negligence claims arise under New York state law.

> To maintain a claim against a municipal employer for the "negligent hiring, training, and retention" of a tortfeasor under New York law, a plaintiff must show that the employee acted "outside the scope of her employment." If the employee acted within the scope of her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*.

*Velez v. City of N.Y.*, 730 F.3d 128, 136 (2d Cir. 2013) (citations omitted).

Here, although Plaintiff does not use the words "within the scope of their employment" in his complaint, the import of his allegations is clear—Plaintiff alleges that the police officers were acting within the scope of their employment. The complaint states that the John Doe officers beat Plaintiff "while acting in their official capacities and under color of State law," (Dkt. 1 at ¶ 1); that the John Doe officers "are sued in their individual and official capacities *as police officers*...," (*id.* at ¶ 10 (emphasis added)); and that the John Doe officers "were acting under color of State law *as police officers employed by* [*the City*]," (*id.* at ¶ 11 (emphasis added)).

In opposition to Defendants' motion, Plaintiff contends that he should be permitted to conduct discovery on this issue and plead in the alternative. (Dkt. 6-3 at 16-19). The problem with Plaintiff's argument is that he has not even attempted to plead his

- 16 -

negligence claims in the alternative. At no point in the complaint is it alleged that the John Doe officers were acting outside the scope of their employment.

As it stands, the complaint only contains allegations that the John Doe officers were acting within the scope of their employment. As a result, the motion to dismiss Plaintiff's claims against the City and Ciminelli for negligent hiring, training, supervision, and retention, is granted. *See Velez*, 730 F.3d at 136; *see, e.g., Steele v. Rochester City Police Dep't*, No. 6:16-cv-06022-MAT, 2016 WL 1274710, at *3 (W.D.N.Y. Apr. 1, 2016); *Stevens v. Webb*, No. 12-CV-2909 (KAM), 2014 WL 1154246, at *12 (E.D.N.Y. Mar. 21, 2014).

### 2. Plaintiff's Negligence and Negligent Infliction of Emotional Distress Claims

Finally, Defendants argue that Plaintiff's claims for negligence and negligent infliction of emotional distress must also be dismissed because Plaintiff alleges intentional conduct, and because Plaintiff has not alleged a special duty as required under New York law. (Dkt. 3-2 at 8-10).

Under New York law, "[w]hen a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Dineen ex rel. Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002). "[O]nce intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical

injuries may have been inflicted inadvertently." *Mazzaferro v. Albany Motel Enters., Inc.*, 515 N.Y.S.2d 631, 632-33 (3d Dep't 1987).

Here, Plaintiff's allegations cannot be read as arising in negligence, as Plaintiff clearly asserts intentional conduct by five or six John Doe officers. As Plaintiff alleges intentional conduct by Defendants, he cannot also claim negligence.

Moreover, even if Plaintiff was permitted to claim negligence as an alternative cause of action, he has failed to do so properly. "[A]n agency of government is not liable for the negligent performance of a governmental function unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public.'" *McLean v. City of N.Y.*, 12 N.Y.3d 194, 199 (2009); *see, e.g., Valdez v. City of N.Y.*, 18 N.Y.3d 69, 75 (2011) ("Under the public duty rule, although a municipality owes a general duty to the public at large to furnish police protection, this does not create a duty of care running to a specific individual sufficient to support a negligence claim, unless the facts demonstrate that a special duty was created."). A special duty requires a "special relationship between the plaintiff and the governmental entity." *McLean*, 12 N.Y.3d at 199.

> A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation.

*Id.* (citation omitted).

"It is the plaintiff[']s obligation to prove that the government defendant owed a special duty of care to the injured party because duty is an essential element of the negligence claim itself." *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 426 (2013). "In situations where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity." *Id.*

Plaintiff has not alleged any special duty between Defendants and himself. Plaintiff only alleges that Defendants owed him a duty of care—the same duty which would be owed to the general public. (*See* Dkt. 1 at ¶ 117 ("Defendants owed a duty of care to Plaintiff to act in a lawful manner and to not use unlawful excessive physical force against Plaintiff. . . .")). Plaintiff's argument that the negligence claims "should not be dismissed since discovery is necessary," (Dkt. 6-3 at 19), is rejected outright as failing to understand the purpose of the instant motion, which is directed to the plausibility of the factual allegations in the complaint.

As a result, the motion to dismiss Plaintiff's claims for negligence and negligent infliction of emotional distress is granted. *See Valdez*, 18 N.Y.3d at 75 ("[I]n order to pursue [a] negligence action against the [municipal defendant] in this case, [the] plaintiffs were required to allege a special duty.").

IV.   **Without Prejudice Dismissal**

Although Plaintiff has failed to state a cause of action with respect to the claims outlined above, because the Court cannot definitively conclude that Plaintiff is unable to

state a cause of action with respect to at least some of those claims, the dismissal is without prejudice.

Plaintiff has not made any request for leave to replead, and, even if the Court considered the additional factual information Plaintiff offers outside the four corners of the complaint, it is not clear he could assert viable causes of action. As a result, the Court declines to *sua sponte* grant leave to replead the dismissed causes of action. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 76 (2d Cir. 1998).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion is granted in part and denied in part. The Clerk of Court is directed to terminate defendant Ciminelli as a party to this action. The following claims remain: (1) illegal search and seizure against the John Doe officers; (2) excessive use of force against the John Doe officers; (3) failure to intervene/protect against the John Doe officers; (4) battery against the John Doe officers and the City; and (5) assault against the John Doe officers and the City.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: July 26, 2017
      Rochester, New York